UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LANISHA W. O/B/O A.W.,

               Plaintiff,

     v.                            **DECISION AND ORDER**
                                            19-CV-1589S

COMMISSIONER OF SOCIAL SECURITY

               Defendant.

_____


      1.     Plaintiff Lanisha W.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application on behalf of A.W. for supplemental security income benefits under the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.     On February 9, 2017, Plaintiff filed an SSI application on behalf of her child, Claimant A.W., alleging that A.W. has been disabled since October 1, 2015, due to attention-deficit hyperactivity disorder ("ADHD") and sleep apnea. (R.[2] at 61, 142.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ Brian LeCours held a hearing on October 3, 2018, at which Plaintiff and A.W., represented by her attorney, appeared and testified. (R. at 30-59.) At the time of the hearing, A.W. was nine years old. (R. at 60.)

_____

[1]  In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify plaintiff by her first name and last initial.

[2]  Citations to the underlying administrative record are designated as "R."

3.      On December 4, 2018, the ALJ issued a written decision denying Plaintiff's application on behalf of A.W. (R. at 12-25.) On September 23, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on November 22, 2019, challenging the Commissioner's final decision.[3]

4.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 7, 11.)  Plaintiff filed a response on August 10, 2020, (Docket No. 12), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

5.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[3] The ALJ's December 4, 2018, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

6.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.      An individual under the age of eighteen is considered disabled within the meaning of the Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner has set forth a three-step process to determine whether a child is disabled as defined under the Act.   See 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. Id. § 416.924(b). If so, the child is not disabled.  Id.  If not, the ALJ proceeds to step two and determines whether the child has a medically determinable impairment(s) that is "severe." Id. § 416.924(c). If the child does not have a severe impairment(s), he or she is not disabled. Id. If the child does have a

severe impairment(s), the ALJ continues to step three. At step three, the ALJ examines whether the child's impairment(s) meets, medically equals, or functionally equals the listed impairments in Appendix 1 to Subpart P of Part 404 of the Commissioner's regulations (the "Listings"). Id. § 416.924(d).

8.      In determining whether an impairment(s) functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. Id. § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must result in "marked" limitations in two domains or an "extreme" limitation in one domain.  Id. § 416.926a(a). A child has a "marked" limitation when his or her impairment(s) "interferes seriously" with his or her ability to independently initiate, sustain, or complete activities.  Id. § 416.926a(e)(2). A child has an "extreme" limitation when his or her impairment(s) "interferes very seriously" with his or her ability to independently initiate, sustain, or complete activities. Id. § 416.926a(e)(3).  If the child has an impairment(s) that meets, medically equals, or functionally equals the Listings, and the impairment(s) meets the Act's duration requirement, the ALJ will find the child disabled.  Id. § 416.924(d).

9.      The ALJ first found that A.W. was a school-age child at the time the application was filed and at the time of the hearing. (R. at 15.) The ALJ then followed the three-step process for evaluating A.W.'s SSI claim. At the first step, the ALJ found that A.W. has not engaged in substantial gainful activity since February 9, 2017, the date of Plaintiff's SSI application. (Id.) At the second step, the ALJ determined that A.W. has the

severe impairments of ADHD, oppositional defiant disorder, anxiety, and depression. (Id.) At the third step, the ALJ found that A.W. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Id.) The ALJ then proceeded to consider whether A.W. has an impairment or combination of impairments that functionally equals the Listings, but concluded that A.W. does not because A.W. does not have an impairment or combination of impairments that result in either marked limitations in two domains of functioning or extreme limitation in one domain of functioning. (R. at 15-25.) As a result, the ALJ held that A.W. has not been disabled within the meaning of the Act since the February 9, 2017, application date. (R. at 25.)

10.     Plaintiff argues that the ALJ's decision warrants remand because his finding that A.W. has less than marked limitations in the domains of caring for oneself and health and physical well-being was not supported by substantial evidence. Plaintiff also argues that the ALJ improperly discredited her testimony. For the following reasons, Plaintiff's arguments are convincing.

11.     Plaintiff first argues that the ALJ erred in finding that A.W. was less than markedly limited in the domain of caring for oneself.

12.     The domain of caring for oneself relates to how well a child can "maintain a healthy emotional and physical state, including how well [he or she gets his or her] physical and emotional wants and needs met in appropriate ways; how [he or she] cope[s] with stress and changes in [his or her] environment; and whether [he or she] take[s] care of [his or her] own health, possessions, and living area." 20 C.F.R. § 416.926(k)(1). The Commissioner has set forth certain "[a]ge group descriptors" to help determine whether school-age or adolescent children are limited in this domain. According to the

5

Commissioner, a school-age child should be able to "be independent in most day-to-day activities (e.g., dressing yourself, bathing [him- or her-]self), although [he or she] may still need to be reminded sometimes to do these routinely. … [A child] should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior, begin to demonstrate consistent control over [his or her] behavior, and … be able to avoid behaviors that are unsafe or otherwise not good for [him or her]." (k)(iv). Examples of limitations in this domain are a child using self-soothing activities showing developmental regression (e.g., thumbsucking, re-chewing food), having restrictive or stereotyped mannerisms (e.g., body rocking, headbanging) and engaging in self-injurious behavior (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take medication), or ignoring safety rules. (k)(3)(ii)-(iv).

13.     In explaining his conclusion that A.W. was not limited in this domain, the ALJ noted the ALJ noted A.W.'s "struggles with skin picking and hair picking," but found that it did not significantly interfere with her ability to perform at school or in the home, and that, apart from this, the record shows that A.W. is largely self-sufficient for her age. (R. at 24.) The ALJ observed that A.W. could dress herself, tie shoes, and bathe, and follow safety rules as reasons for finding her less than markedly limited in this domain. This finding is not supported by substantial evidence. The record shows that A.W.'s skin-picking was identified as a serious mental impairment. At a child psychiatric evaluation on April 18, 2017, Dr. Janet Ippolito diagnosed A.W. with excoriation disorder and

trichotillomania.[4] (R. at 400.) A.W.'s treatment records demonstrate that skin-picking and hair-pulling were ongoing problems. On November 8, 2016, A.W.'s pediatrician noted that A.W. was digging at her skin, had pus, and had cellulitis on her head and trunk.[5] (R. at 228.) A.W. remained "covered with scabs, scars and open sores" at a September 12, 2016 visit, but she "refused skin creams." (R. at 231.) An overview of her diagnoses noted abscesses and cellulitis. (R. at 221.) This habit caused scarring all over her body that led other children to tease her at school. (R. at 521, 529,) On March 22, 2017, two months after her father's murder, nurse practitioner Mary Sheppard noted that A.W. had been picking at her scalp, with fresh blood and scabs on her head and face and bumps on her neck. (R. at 275.) A.W. was diagnosed with cellulitis and acute lymphadenitis of face, head, and neck, and prescribed antibiotics. (Id.) On June 14, 2017, social worker Jenelle Taylor noted that A.W. had "fresh sores on her face which she was picking, and scars all over her arms and face from continuously picking. Mood was sad." (R. at 521.) Taylor observed that A.W.'s picking was becoming worse with increased stress and changes. (Id.) A treatment plan dated April 17, 2017, indicated a need for psychiatric assessment. (R. at 525.)

---

[4] Trichotillomania, also known as "hair-pulling disorder," is a type of impulse control disorder. People who have trichotillomania have an irresistible urge to pull out their hair, usually from their scalp, eyelashes, and eyebrows. They know they can do damage but often can't control the impulse. They may pull out their hair when they're stressed as a way to try to soothe themselves. … People with these disorders know that they can do damage by acting on the impulses, but they cannot stop themselves. They may pull out their hair when they're stressed as a way to try to soothe themselves. https://www.webmd.com/anxiety-panic/guide/trichotillomania#1. Last accessed 12/4/2020 at 4:37 PM.

[5] Cellulitis is a common and sometimes painful bacterial skin infection. It may first appear as a red, swollen area that feels hot and tender to the touch. The redness and swelling can spread quickly.
It most often affects the skin of the lower legs, although the infection can occur anywhere on a person's body or face.
Cellulitis usually happens on the surface of the skin, but it may also affect the tissues underneath. The infection can spread to your lymph nodes and bloodstream.  https://www.healthline.com/health/cellulitis, last accessed 12/4/2020 at 3:21 PM.

14.     The evidence reveals that, rather than being a mere habit, this picking behavior is a self-soothing, self-destructive behavior. It actively caused A.W. harm, in the form of serious wounds and infections. Psychiatric Examiner Dr. Ippolito categorized it as mental impairment. Yet the ALJ did not properly consider it as such.

15.     Instead, he downplayed the severity of this impairment. For example, he juxtaposed her picking behaviors to her ability to dress herself, tie her own shoes, bathe, and brush her teeth. (R. at 24.) But the ALJ is not to consider a claimant's physical abilities to perform self-care tasks like bathing, getting dressed, or cleaning up their room in this domain. SSR 09-07. "Rather, in assessing caring for oneself, "[an ALJ is to] focus on how well a child relates to self by maintaining a healthy emotional and physical state in ways that are age-appropriate and in comparison to other same-age children who do not have impairments." (Id.) The ALJ also justified his finding by noting that A.W. could "obey safety rules," but this is contradicted by the fact that A.W. was unable to stop doing a self-destructive, unsafe, activity. (Id.) This Court finds troubling the ALJ's comment that A.W.'s skin issues were the "result" of not using her lotions as prescribed. (R. at 17.) On the contrary, as Dr. Ippolito diagnosed, A.W.'s skin issues were the result of a psychological impairment. (R. at 17-19.) A.W.'s failure to comply with her prescription is in itself evidence of her limited ability to care for herself appropriately.

16.     Because this Court finds that the ALJ did not properly assess A.W.'s skin-picking disorder, his opinion is not based on substantial evidence. On remand, ALJ should reexamine this issue and determine the extent to which A.W.'s diagnosed trichotillomania and skin excoriation disorders represent marked limitations in her ability to care for herself.

17.     Plaintiff further argues that the ALJ erred in determining that A.W. had less than marked limitations in health and physical well-being.

18.     The domain of health and physical well-being considers the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on a child's functioning. 20 C.F.R. § 416.926(l). A child might experience generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of its impairment(s). (Id.) Examples of limitations are somatic complaints related to a child's impairments (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches, or insomnia); limitations in a child's physical functioning because of its treatment (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments); or exacerbations from one impairment or a combination of impairments that interfere with a child's physical functioning.   (Id.)

19.     For this domain, an ALJ may also consider a child to have a "marked" limitation if the child is frequently ill because of its impairment(s) or has frequent exacerbations of the impairment(s) that result in significant, documented symptoms or signs. 20 C.F.R. § 416.926 (e)(2)(iv). For purposes of this domain, "frequent means episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more." (Id.) A marked limitation can also result from episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once

every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity. (Id.)

20.     In concluding that A.W. has less than marked limitations in this domain, the ALJ noted the infections and scarring resulting from A.W.'s skin and hair picking, but stated that these were less than marked because they did not interfere with A.W.'s ability to function on a daily basis. (R. at 25.) The ALJ also noted that A.W. performed well in school and at home when her treatment was continuous. (Id.) In making this determination, the ALJ gave significant weight to the opinions of consultative examiner Dr. Janine Ippolito and agency reviewing physician Dr. B. Stouter. (R. at 18.)

21.     This Court finds problems with the ALJ's assessment of this domain. First, noting that A.W.'s condition was better when treatment was continuous does not address the fact that A.W.'s noncompliance with treatment was itself a symptom of her inability to care for herself. A.W.'s mental limitation both causes the problem and makes it hard to comply with treatment. The ALJ's finding that her somatic symptoms subsided when treatment was continuous skirts the issue of how her mental limitation affected her somatic functioning.

22.     This Court also finds that the ALJ erred in giving significant weight to both Dr. Ippolito's and Dr. Stouter's opinions.  Dr. Ippolito, a psychiatrist, conducted a child psychiatric evaluation on April 18, 2017. (R. at 397-401.) She diagnosed A.W. with ADHD, excoriation disorder, and trichotillomania. (R. at 400.) Dr. Ippolito opined that A.W. was able to learn, adapt to change, ask questions, interact with peers and adults with mild limitations. (Id.) She opined that A. W. could attend to and follow directions, sustain concentration, complete age-appropriate tasks, and adequately maintain appropriate

social behavior with moderate limitations. (Id.) Dr. Ippolito did not address any physical limitations that A.W.'s psychological problems may have posed, but opined that A.W.'s psychiatric problems did not appear to be significant enough to interfere with A.W.'s ability to function on a daily basis. Dr. Ippolito also stated that treatment was expected to be ongoing given the pervasive nature of A.W.'s psychiatric conditions. (R. at 400-401.)

23.     Dr. Ippolito's opinion addresses how A.W.'s psychological issues impacted her interpersonal functioning and ability to concentrate, but it does not address any physical limitations. Hence it is not evidence that can support a finding regarding the domain of health and physical well-being.

24.     Dr. Stouter found that A.W. was less than markedly limited in the domain of health and physical well-being. As his only explanation, he mentioned a nurse practitioner's note from March 2017 where A.W.'s mother expressed concern about hair loss and orders for antibiotics. (R. at 65.) The ALJ gave Dr. Stouter's opinion significant weight, finding it consistent with Dr. Ippolito's opinion, and not contradicted by any other medical opinion. (R. at 18.) But, as noted, Dr. Ippolito's opinion spoke to A.W.'s mental impairments, not her physical limitations. And the record does not contain *any* medical opinions addressing the physical impact of A.W.'s picking condition. The record does contain, however, multiple references to open wounds, infections, scarring, and courses of antibiotics.

25.     Further, the ALJ failed to give good reasons for the weight he gave Dr. Stouter's opinion. In determining the weight to give to Dr. Stouter's opinion, the ALJ was required to consider such factors as: (1) his examining relationship with A.W.; (2) his treatment relationship with A.W., including length, frequency of examination, and nature

11

and extent of the relationship; (3) the opinion's supportability; (4) the opinion's consistency; (5) Dr. Stouter's specialization; and (6) other factors. 20 C.F.R. § 404.1527(c)(2); see also DiMauro v. Berryhill, No. 3:15CV1485 (DJS), 2017 WL 1095024, at *8 (D. Conn. Mar. 23, 2017). The ALJ did not expressly mention any of these factors except consistency with Dr. Ippolito's opinion, and the lack of contradiction by other opinions. (See R. at 18.) This was error both because the ALJ did not fully explain his reasoning, and because neither Dr. Ippolito's opinion nor the lack of a contradictory opinion actually supports Dr. Stouter's finding. Dr. Stouter's opinion is not consistent with record evidence of pervasive skin issues caused by A.W.'s picking disorder, the psychiatric emphasis of Dr. Ippolito's opinion, and the lack of *any* medical opinion on this issue does necessarily support Dr. Stouter's assessment. Dr. Stouter's opinion is not consistent with the record, and does not constitute substantial evidence on which the ALJ could rely. For all the foregoing reasons, the ALJ's opinion regarding this domain is not supported by substantial evidence.

26. Plaintiff also argues that the ALJ did not properly weigh the testimony of Lanisha W., A.W.'s mother. Because remand is warranted on other grounds, this Court will not consider this argument here.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.


12

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings, consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:        December 11, 2020
              Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge